IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BERKSHIRE REFRIGERATED )
WAREHOUSING LLC, )
 )
      Plaintiff, )
 )
  vs. ) Case No. 05 C 1953
 )
COMMERCIAL UNDERWRITERS )
INSURANCE COMPANY and LEXINGTON )
INSURANCE COMPANY, )
 )
      Defendants. )

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Berkshire Refrigerated Warehousing LLC has sued its insurers, Commercial Underwriters Insurance Company (CUIC) and Lexington Insurance Company, for breach of contract and vexatious delay. *See* 215 ILCS 5/155. The parties have filed cross motions for summary judgment. For the reasons stated below, the Court grants each of the parties' motions in part.

**Facts**

Berkshire operates refrigerated warehouses in Chicago, Illinois. CUIC and Lexington are both Delaware corporations that issue surplus lines insurance policies. At issue in this case are insurance policies obtained by Berkshire from CUIC and Lexington to insure its Chicago area warehouses. Second Am. Compl. ¶¶ 1-3.

On July 5, 2003, Berkshire's warehouse at 4500 S. Packer was severely damaged in a microburst – a violent windstorm. Berkshire asserts that its losses, less its $25,000 deductible, totaled $8,661,516. Pl. 56.1 Stmt. ¶ 11. The parties disagree about whether this figure is subject to further adjustment. Berkshire claims it is entitled to recover its entire adjusted loss of $8,636,516, while the insurers maintain that Berkshire's recovery is limited to $7,006,575, the amount the insurers have already paid Berkshire. Def. 56.1 Stmt. ¶ 18.

**Discussion**

A party is entitled to summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When the parties have filed cross motions for summary judgment, the Court evaluates each motion drawing reasonable inferences in the light most favorable to the non-moving party. *Continental Cas. Co. v. Northwestern Nat'l Ins. Co.*, 427 F.3d 1038, 1041 (7th Cir. 2005).

   1.   **Breach of contract**

When interpreting insurance policies, "a court's primary objective is to ascertain and give effect to the intentions of the parties as expressed by the words of the policy." *Cent. Ill. Light Co. v. Home Ins. Co.*, 213 Ill. 2d 141,162, 821 N.E.2d 206, 213 (2004). If the terms of the insurance policy are clear and unambiguous, a court must give effect to their plain meaning, but if the terms are susceptible to multiple interpretations, a court must construe them in the light most favorable to the insured. *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 154 Ill. 2d 90, 108, 607 N.E.2d 1204, 1212 (1992). Whether an insurance policy is ambiguous is a question of

2

law. *See Bohner v. Ace American Ins. Co.*, 359 Ill. App. 3d 621, 623, 834 N.E.2d 635, 638 (2005).

Berkshire and the insurers agree that the insurance policies provide scheduled coverage, which limits an insured's recovery to the stated value of the insured property. Nonetheless, the parties provide divergent interpretations of how the scheduled coverage works in Berkshire's insurance policies. Berkshire maintains that the insurance policies limit its recovery to the total stated value of the warehouse at 4500 S. Packer, less the $25,000 deductible – a total of $9,385,003. Because its loss was less than that amount, Berkshire contends that it was entitled to recover the full amount of its loss. The insurers maintain that under the insurance policies, Berkshire's recovery with regard to each category of covered property at 4500 S. Packer is limited to the stated value of that particular category: $5,600,000 for the building, $2,840,000 for the contents, and $900,000 for business income. Second Am. Compl., Ex. C. For the purposes of summary judgment, the insurers agree that Berkshire suffered $7,175,179 in building damage, $506,575 in loss of contents, and $979,762 in loss of business income. They contend, however, that Berkshire can recover only $5,600,000 for the building damage and $900,000 for loss of business income. *Id.*, Exs. C, D.

According to the Occurrence Limit of Liability (Occurrence Limit) in each of the insurance policies,

> 1. The limit or Amount of Insurance shown on the face of this policy or endorsed onto this policy, is the total limit of the Company's liability applicable to each occurrence, as hereinafter defined....
> 2. The premium for this policy is based upon the Statement of Values on file with the Company, or attached to this policy. In the event of loss hereunder, liability of the Company, subject to the terms of paragraph one (1) above, shall be limited to the least of the following:
>     a. The actual adjusted amount of loss, less applicable deductible(s).

b. The total stated value for the property involved, as shown on the latest Statement of Values on file with the Company, less applicable deductible(s).
c. The limit of Liability or Amount of Insurance shown on the face of this policy or endorsed onto the policy.

*Id.*, Ex. A at LEX 1318; Ex. B at LEX 1254.

The relevant portion of the Statement of Values referred to in Section 2(b) of the Occurrence Limit reads:

| Loc. No. | Address | Building Value | Contents Value | Business Income | Total Location Value[1] |
|---|---|---|---|---|---|
| 1 | 4600 S. Packers Chicago, IL | $7,500,000 | $450,000 | $500,000 | $8,820,008 |
| 2 | 4600 S. Packers Chicago, IL (rear) | 750,000 | 0 | 0 | $757,003 |
| 3 | 4500 S. Packers Chicago, IL | 5,600,000 | 2,840,000 | 900,000 | $9,410,003 |
| 4 | 2525 W. 139th Street Posen, IL | 3,750,000 | 500,000 | 300,000 | $4,600,006 |
|  | Totals | $17,600,000 | $3,790,000 | $1,790,000 | $23,587,020 |

*Id.*, Ex. C.

From the face of the Statement of Values, the meaning of the phrase "total stated value for the property involved" as used in the Occurrence Limit is unclear. Specifically, the "total stated value of the property involved" conceivably could refer to three different figures: the total location value for the 4500 S. Packer warehouse ($9,410,003), the value of each category of

---

[1] The "total location value" for each warehouse is higher than the sum of the values of the specific categories of property. For example, for the warehouse at issue in this case, the total location value listed is $9,410,003, but the sum of the values of the various categories is $9,340,000. We don not know the reason for this $70,003 discrepancy.

property at that location (Building-$5,600,000; Contents-$2,840,000; Business Income-$900,000), or the total value of each category of property located at all of Berkshire's locations (Building-$17,600,000; Contents-$3,790,000; Business Income-$1,790,000). The phrasing in the Occurrence Limit that gives rise to the ambiguity is the use of the term "*total* stated value," a term that appears nowhere in the Statement of Values. The use of the word "total" suggests that the term contemplates reference to a sum of more than one "stated value," which leads one to the only "totals" listed in the Statement of Values – either the "total location value" at the end of each row or the "total" at the bottom of each column. At a minimum, the Court cannot say that the "total stated value of the property involved" clearly or unambiguously refers to the category-by-category figures listed in each box or cell of the Statement of Values chart – the position taken by CUIC and Lexington.

When an insurance policy is subject to multiple interpretations, a court must construe the policy in favor of coverage. *Travelers Ins. Co. v. Eljer Mfg., Inc.*, 197 Ill. 2d 278, 292, 757 N.E.2d 481, 491 (2001). Because the term at issue is ambiguous, the Court reads the Occurrence Limit in the light most favorable to Berkshire and concludes that the applicable Occurrence Limit is $9,385,003, the total location value for 4500 S. Packer, less Berkshire's deductible.[2]

Berkshire also contends that the insurers failed to pay $1,000,000, over and above the $8,636,516 Berkshire contends is due, for the increased costs of rebuilding the warehouse in compliance with new building regulations. Each of the insurance policies at issue contains an Ordinance or Law Coverage Endorsement, which is "designed to cover the increased cost of

---

[2] For this reason, the Court need not consider Berkshire's alternative argument that the insurers should have treated its refrigeration equipment as part of the contents, rather than the building, at 4500 S. Packer.

5

construction imposed by new building codes." *See Indiana Ins. Co. v. Pana Cmty. Sch. Dist. No. 8*, 314 F.3d 895, 902 (7th Cir. 2002). Berkshire contends that there is no limitation on recovery under this section; the insurers maintain that recovery under this section is limited to the stated value of the building property at 4500 S. Packer.

On this issue, the Court agrees with the insurers. In both Ordinance or Law Coverage Endorsements (Ordinance Coverage), section D clearly states, "We will not pay more: ... 3. For all loss or damage in any occurrence than the Limit of Insurance applicable to the covered Building property." The policies clearly state that the limit applicable to the covered building – the 4500 S. Packer warehouse – was $5,600,000. In contrast with the other policy provision we examined earlier, this limitation makes clear reference to the value stated for the building itself; it does not refer to any sort of unidentified "total."

We recognize that this determination is arguably problematic from the standpoint of the insured: in a situation where the damage to building property equals its stated value, the insured will be unable to recover the added costs of compliance with building regulations in reconstruction. As with most insurance contracts, however, both the insurers and the insured take risks in valuing the insured property and obtaining and providing coverage. In this case, Berkshire took the risk that if the building property of one of its warehouses was completely destroyed, it would be unable to utilize its Ordinance Coverage beyond the amount it would otherwise recover for the building. The Court therefore finds that once the insurers have paid $5,600,000 for damage to the building property at 4500 S. Packer, they have no additional obligation under Berkshire's Ordinance Coverage.

2.     **Vexatious delay**

Both parties have moved for summary judgment on the issue of whether the insurers unreasonably and vexatiously delayed settling Berkshire's claims such that the company is entitled to attorney's fees and costs. A court may award attorney's fees and costs to an insured when an insurance company unreasonably and vexatiously delays in settling the insured's claim. 215 ILCS 5/155. In summarizing Illinois case law, however, the Seventh Circuit has stated that even if an insurer adopts an ultimately unsuccessful position, its conduct is not unreasonable and vexatious if "there is a bona fide dispute concerning the scope and application of the insurance coverage; (2) the insurer asserts a legitimate policy defense; (3) the claim presents a genuine legal or factual issue regarding coverage; and (4) the insurer takes a reasonable legal position on an unsettled issue of law." *Citizens First Nat. Bank v. Cincinnati Ins. Co.*, 200 F.3d 1102, 1110 (7th Cir. 2000) (citations omitted).

In this case, the undisputed evidence indicates that there was a bona fide dispute about the meaning of various terms in the insurance contracts. Though we ultimately adopted Berkshire's position regarding the ambiguity of the Occurrence Limitation, we cannot say that the insurers' interpretation was unreasonable. Moreover, we found in the insurers' favor regarding the correct interpretation of the Ordinance Coverage. Consequently, no fact finder reasonably could find that the insurers unreasonably and vexatiously delayed settling Berkshire's claim.

**Conclusion**

For the reasons stated above, the Court grants in part and denies in part each party's motion for summary judgment [docket nos. 38, 57]. The Court grants plaintiff's motion with regard to the insurance policies' Occurrence Limitation but otherwise denies the motion. The Court grants the defendants' motion with regard to the Ordinance Coverage and vexatious delay but otherwise denies the motion. The case is set for a status hearing on April 6, 2006 at 9:30 a.m.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: March 27, 2006